# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Cidney Bowdean Ingram,

                 Petitioner,       Case No. 19-cv-12169

v.                               Judith E. Levy
                               United States District Judge

Fredeane Artis,[1]

                 Respondent.

_____/

# OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Cidney Bowdean Ingram, a state prisoner currently confined at the Thumb Correctional Facility in Lapeer, Michigan, has filed through counsel an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging his St. Clair County, Michigan, convictions of first-degree premeditated murder, Mich. Comp. Laws § 750.316; and possession of a firearm during the

---

[1] The caption is amended to reflect the proper respondent in this case, the warden of the prison where Petitioner is currently incarcerated. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *see also* Rules Governing § 2254 Case, Rule 2(a), 28 U.S.C. foll. § 2254.

commission of a felony, Mich. Comp. Laws § 750.227b. (ECF No. 1.) Petitioner raises three claims of ineffective assistance of trial and appellate counsel. *Id.* Respondent has filed an answer. (ECF No. 6.)

For the reasons set forth below, and because the state court's decision denying Petitioner's claims was not contrary to nor an unreasonable application of Supreme Court precedent, the petition for habeas corpus is denied. The Court also denies a certificate of appealability and denies leave to proceed on appeal *in forma pauperis*.

## I.   Background

The Michigan Court of Appeals summarized the facts of Petitioner's case as follows:

> Defendant and his girlfriend returned to their townhouse during the early morning hours of June 15, 2012. Defendant went inside the townhouse and his girlfriend went to the parking lot to retrieve something from her car. When she returned, she informed defendant that some men in the parking lot made sexual comments to her. The defendant became angry. According to his girlfriend, defendant walked into the living room and retrieved a gun. Defendant then engaged the men in the parking lot, including the victim, in a verbal confrontation.

> The argument ensued, and one of the men with the victim saw defendant come to the door with a gun. Another eyewitness testified that he did not see anything in the

2

victim's hands. Defendant's girlfriend testified that defendant racked the gun and fired a warning shot while he was inside the apartment. She then saw defendant fire several other shots. The man with the victim heard a gunshot, which appeared to hit the victim in the chest. He then saw the victim turn and attempt to leave, but defendant came out of the apartment and shot the victim in the back. The victim died of his wounds.

While defendant admitted to verbally confronting the men, he claimed that the three men approached the apartment before he retrieved his gun and loaded it. Defendant testified that he fired a warning shot but the men kept coming toward the apartment. Defendant claimed that he backed up, but when the victim stepped inside of the apartment, Defendant shot him. Defendant claimed that the victim was so close that he felt the victim's body on the gun. He also claimed that the victim tried to enter the home again, which is when Defendant shot the victim in the chest. According to defendant, he fired the gun because the victim was trying to enter the apartment, and defendant feared that he or his family would be hurt.

*People v. Ingram*, No. 315078, 2014 WL 2538495, at *1 (Mich. Ct. App. June 5, 2014). A jury convicted Petitioner on charges of first-degree murder and felony-firearm. He was sentenced to a life term for the murder conviction and to a term of two years for the felony-firearm conviction. *Id.*

3

On direct appeal, Petitioner argued: (1) that his conviction was not supported by sufficient evidence and was against the great weight of the evidence; (2) that he was denied a fair trial due to prosecutorial misconduct; (3) that the trial court erred in excluding evidence pertaining to the victim's character; and (4) that the trial court erred in denying Petitioner's post-conviction request for an evidentiary hearing on the issue of juror misconduct. *Id.* at \*1–\*5. The court of appeals affirmed Petitioner's convictions, *id.* at \*5; and the Michigan Supreme Court denied leave to appeal. *People v. Ingram*, 497 Mich. 1010 (2015).

Petitioner returned to the state trial court with a combined motion for an evidentiary hearing, a new trial, and relief from judgment pursuant to Michigan Court Rule 6.501, *et seq.* (*See* ECF No. 7-11.) The trial court denied the motion for a new trial. (*See* ECF No. 7-13.) After the court ordered and received the prosecution's response to the motions, it denied the motions for an evidentiary hearing and relief from judgment, as well as a motion for reconsideration. (*See* ECF No. 1-1, PageID.71–74.) (ECF No. 7-18.) Petitioner sought leave to appeal the trial court's orders, which the Michigan Court of Appeals denied. (ECF No. 7-21, PageID.1491.) The Michigan Supreme Court also denied leave

4

to appeal and a motion for reconsideration. *People v. Ingram*, 503 Mich. 1018 (2019); *People v. Ingram*, 504 Mich. 960 (2019).

Petitioner's timely application for a writ of habeas corpus followed. In it, he raises the same issues on which he based his post-conviction motions for collateral relief. Those issues are as follows:

I.  The Michigan courts unreasonably applied clearly established federal law and unreasonably determined the facts in upholding Petitioner's convictions where Petitioner was denied the effective assistance of both trial and appellate counsel where: (a) trial counsel failed to object to a jury instruction that Petitioner had a duty to retreat; (b) trial counsel failed to request a jury instruction that defined the porch as part of the home from which Petitioner had no duty to retreat; and (c) appellate counsel failed to raise these issues on direct appeal. These failures individually and collectively amounted to constitutionally ineffective assistance of both trial and appellate counsel, and a denial of due process, in violation of U.S. Const., Amend. V, VI, XIV.

II. The Michigan courts unreasonably applied clearly established federal law and unreasonably determined the facts in upholding Petitioner's conviction where Petitioner was denied the effective assistance of both trial and appellate counsel where: (a) trial counsel failed to request jury instructions which, for purposes of explaining the duty to retreat, defined the offenses of breaking and entering and home invasion as offenses that included the element of a "breaking," which could be established by the entry of any part of a person's body into the dwelling; and (b) appellate counsel failed to raise this issue on direct appeal. These failures individually and collectively amounted to constitutionally ineffective assistance of both trial and appellate counsel, and a denial of due process, in violation of U.S. Const., Amend. V, VI, XIV.

III.   Petitioner has met the requirements for the issuance of a writ of habeas corpus by demonstrating that both his trial attorney and his first appellate attorney were ineffective, and as a result, he suffered actual prejudice.

(*See* ECF No. 1.)

## II.   **Legal Standard**

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-

court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A state court's factual determinations are presumed correct on federal habeas review, unless rebutted by "clear and convincing evidence . . ." 28 U.S.C. § 2254(e)(1), Further, review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington*, 562 U.S. at 98. Where the state court's decisions provide no rationale, the burden remains on the habeas petitioner to demonstrate "there was no reasonable basis for the state court to deny relief." *Id*. However, when a state court has explained its reasoning, that is, "[w]here there has been one reasoned state judgment rejecting a federal

claim," federal courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson*, 138 S. Ct. at 1194 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Accordingly, when the last state court to rule provides no basis for its ruling, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and apply *Ylst*'s presumption. *Id*. The "look through" rule applies whether the last reasoned state court opinion based its ruling on procedural default, *id*. at 1194 (citing *Ylst*, 501 U.S. at 803), or ruled on the merits. *Id*. at 1195 (citing *Premo v. Moore*, 562 U.S. 115, 123–133 (2011)) (other citation omitted).

However, "the stringent requirements of § 2254(d) apply only to claims that were 'adjudicated on the merits in state court proceedings.'" *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014) (citing *Cullen*, 563 U.S. 170, 131 S. Ct. at 1391). If the state court did not adjudicate a claim on the merits, the court may examine the issue *de novo*. *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *see also Bies*, 775 F.3d at 395 (citing *Cullen*, 563 U.S. 170, 131 S. Ct. at 1401; *Robinson v. Howes*, 663 F.3d 819, 822–23 (6th

Cir. 2011)). In other words, under those circumstances, "the deferential standard of review mandated by the AEDPA does not apply." *Higgins v. Renico*, 470 F.3d 624, 630–31 (6th Cir. 2006).

## III.   Analysis

### A. Introduction

Petitioner argues that his trial attorney was ineffective both for failing to object to one jury instruction (Claim I), and failing to request two others (Claims I and II). (ECF No. 1, PageID.11–12.) More specifically, in his first claim Petitioner argues that trial counsel should have objected to the erroneous jury instruction that Petitioner had a duty to retreat. (*Id.* at PageID.37.) He also asserts his attorney should have requested the jury be instructed that "the 'castle doctrine' . . . extends to an attached porch." (*Id.*) In his second claim, Petitioner argues his attorney was ineffective for failing to request an instruction on the elements of the offenses of breaking and entering and home invasion. (*Id.*) Such an instruction would have supported a rebuttable presumption of Petitioner's self-defense theory, in that the jury could find the victim had committed one of those crimes by placing his foot

inside Petitioner's home, which is consistent with Petitioner's testimony. (*Id.* at PageID.37–38.)

## B. Habeas Standard for Ineffective Assistance of Counsel

Habeas claims of ineffective assistance are evaluated under a "doubly deferential" standard. *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer of deference is the deficient performance plus prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). That is, a habeas petitioner must show "that counsel's representation fell below an objective standard of reasonableness[,]" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Lafler*, 494 F. App'x 526, 532 (6th Cir. 2012) (per curiam) (quoting *Strickland*, 466 U.S. at 694)). *Strickland* requires a "'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689).

10

AEDPA provides the second layer of deference, under which a federal habeas court may "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 134 S. Ct. at 18). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101.

## C. Habeas Standard for Review of Jury Instructions

First, "[a] challenge to a jury instruction is not to be viewed in "artificial isolation," but rather must be considered within the context of the overall instructions and trial record as a whole." *Hanna v. Ishee*, 694 F.3d 596, 620-21 (6th Cir. 2012) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). And in general, "[w]here the trial court instructs the jury in accordance with state law and sufficiently addresses the matters of law at issue, no error results and the petitioner is not entitled to habeas relief." *White v. Mitchell*, 431 F.3d 517, 534–35 (6th Cir. 2005) (citing *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000)). Even where a jury instruction is alleged to violate state law,

11

federal habeas relief is generally not available. *Ambrose v. Romanowski*, 621 F. App'x 808, 813 (6th Cir. 2015) (citing *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991); *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000)). Instead, courts must determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Hanna*, 694 F.3d at 620 (citing *Estelle*, 502 U.S. at 72).

Under that standard, "a habeas petitioner's claimed error regarding 'jury instructions must be so egregious that [it] render[ed] the entire trial fundamentally unfair. Without such a showing, no constitutional violation is established and the petitioner is not entitled to relief.'" *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1078 (6th Cir. 2015) (quoting *White*, 431 F.3d at 533) (alterations in original). Put another way, the question on habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Ambrose*, 621 F. App'x at 813 (quoting *Cupp*); *Estelle*, 502 U.S. at 72).

## D. Application

Following the trial court's denial of Petitioner's motions for post-conviction relief, both state appellate courts denied leave to appeal the trial court's orders in standard form orders. (*See* ECF No. 7-21, PageID.1491); *People v. Ingram*, 503 Mich. 1018 (2019) (application for leave to appeal); *People v. Ingram*, 504 Mich. 960 (2019) (reconsideration). Where, as here, those courts did not explain their reasons for granting relief, this Court may "look through" their judgments and assume they relied on the trial court's rationale for denying relief. *Wilson*, 138 S. Ct. at 1194.

However, although the trial court issued the last reasoned opinion, *id.*, it did not address the merits of Petitioner's ineffective assistance claims against *Strickland*'s performance prong. Accordingly, the Court will review this issue *de novo*. *Rompilla*, 545 U.S. at 390. The deferential standard is slightly lower on de novo review. Even under this less deferential standard, however, Petitioner has not demonstrated his entitlement to relief.

13

First, Petitioner's claim that the jury was told Petitioner had a duty to retreat is incorrect. (*See* ECF No. 1, PageID.37, 39, 40.) The trial court's pertinent instructions were as follows:

> A person can use deadly force in self-defense only where it is necessary to do so. If the Defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the Defendant honestly and reasonably believed he needed to use deadly force in self-defense.

> However, a person is never to retreat[2] if attacked in his own home, nor if the person believes that an attacker is about to use a deadly weapon, nor if the person is subject to a sudden, fierce, and violent attack.

> Further, a person is not required to retreat if the person has not or is not engaged in the commission of a crime at the time that the deadly force is used, and has a legal right to be where the person is at that time, and has an honest and reasonable belief that the use of deadly force is necessary to prevent imminent death or great bodily harm to the person or another.

(ECF No. 7-7, PageID.1054–1055.)

Again, courts must review the jury instructions and trial record as a whole. *Hanna*, 694 F.3d at 620–21. The trial court expressly told the

---

2      The applicable Michigan Model Criminal Jury Instruction, to which the instruction given is otherwise nearly identical, includes the word "required" after "never." *See* Mich. Model Crim. Jury Inst. 7.16 Duty to Retreat to Avoid Using Force or Deadly Force ("a person is never required to retreat if attacked . . .").

jury that a person has no duty to retreat in their own home or anywhere they have a legal right to be. Trial counsel's failure to object to these instructions was not objectively unreasonable.

Next, Petitioner argues counsel was ineffective for not requesting an instruction that the porch is part of the home from which a defendant has no duty to retreat. Again taking the instructions as a whole, the jury could reasonably have applied an instruction that *was* given: that Petitioner was not committing a crime on his own porch where he had a legal right to be, and therefore, Petitioner had no duty to retreat from his own front porch.

Petitioner's final claim involves an instruction that establishes a rebuttable presumption. The trial court provided the following instruction:

> If you find that the decedent was breaking and entering a dwelling or business, or committing home invasion . . . or the Defendant honestly and reasonably believed the decedent was engaged in any of the conduct just described, then you must presume that the Defendant had an honest and reasonable belief that imminent death or great bodily harm would occur.

(ECF No. 7-7, PageID.1055.) Petitioner argues that without an instruction on the elements of breaking and entering or home invasion,

15

the jury was unaware that the insertion of "any part of [a person's] body . . . count[s] as an entry." *See*, *e.g.*, Model Crim. Jury Instruction 25.1, Breaking and Entering. Petitioner testified that the deceased victim stepped into his home, but, he argues, the jury did not know that was sufficient for the victim to have committed those crimes. (ECF No. 1, PageID.58.)

The jury was instructed more generally on how to assess the credibility of a defendant's asserted belief that death or great bodily harm was imminent. It was told to "consider all the circumstances as they appeared to the Defendant at the time." (ECF No. 7-7, PageID.1053.) The breaking and entering/home invasion instruction was a more specific example of circumstances which would support a conclusion Petitioner reasonably feared death or great bodily harm. But the fact that this instruction was not given does not mean the jury was inadequately instructed on how to assess a defendant's credible fear justifying lethal self-defense.

The omission of the instructions Petitioner argues his counsel was ineffective for failing to request, was not "so egregious" that the trial was rendered "fundamentally unfair." *Wade*, 785 F.3d at 1078. Trial

counsel's performance did not fall below objective standards of reasonableness.

The trial court did evaluate Petitioner's claims against *Strickland*'s prejudice prong, so AEDPA's "double deference" applies to its findings. The Court must determine "whether the state court's application of the *Strickland* standard was unreasonable . . ." *Harrington*, 562 U.S. at 101.

In its order denying relief, the trial court found Petitioner had not established the "good cause" or "actual prejudice" required for relief under Michigan Court Rule 6.508(D), when a defendant could have but did not raise the issues on direct appeal. (ECF No. 1-1, PageID.74.) The court relied on the state court of appeals' sufficiency-of-the-evidence analysis, reasoning that it also resolved the question of prejudice. (*Id.*)

That is, in deciding that sufficient evidence supported Petitioner's convictions, "the Court of Appeals considered the law on self defense and the duty to retreat, including the premise that a porch is part of the home – the same law that Defendant argues should have been better instructed to the jury." (*Id.*) Had the appellate court addressed counsels' failure to request or object to specific jury instructions it likely would

17

have found Petitioner's desired instructions would not have changed the outcome of the trial. (*Id.*) The trial court also noted that "appellate counsel's decision not to raise these [ineffective assistance and jury instruction] issues on appeal was objectively reasonable and not prejudicial to" Petitioner. (*Id.*)

The trial court's conclusion that Petitioner was not prejudiced by instructional error or his attorneys' related ineffectiveness was not unreasonable. The state courts' factual findings are presumed correct unless rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), a burden Petitioner has not met.

Here, the Michigan Court of Appeals found a "lack of evidence that the victim threatened death or imminent great bodily harm," so Petitioner's use of force was not justifiable self-defense. *Ingram*, 2014 WL 2538495, at *3. It observed that Petitioner's testimony that he shot the victim when the latter attempted to enter the apartment, while he was leaning on the end of his gun, was undermined by evidence the victim was shot from several feet away. *Id.* at *2. Yet other testimony supported the prosecution's theory that Petitioner fired at the victim

18

because he felt "disrespected," not because he was in fear of death or grave bodily harm. *Id.*

Even if the jury had been instructed that a porch is part of a home from which a person has no duty to retreat, or that the crime of breaking and entering may be found when a perpetrator only minimally enters a dwelling, Petitioner has not demonstrated the reasonable likelihood of a different outcome absent his trial counsel's purported ineffectiveness. The state courts were not unreasonable in their denial of relief to Petitioner on this claim.

In addition, Petitioner's claim that his appellate attorney was ineffective also fails. Again, the "doubly deferential" standard of *Abby*, 742 F.3d at 226, applies, and the Court must determine whether the state court "objectively unreasonabl[y]" applied *Strickland*, 466 U.S. 668, to Petitioner's case. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

A criminal defendant "does not have a constitutional right to have his counsel press nonfrivolous points if counsel decides as a matter of professional judgment not to press those points." *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) (citation omitted); *see also Jones v. Barnes*, 463 U.S. 745, 750–51 (1983)). Appellate attorneys are not

required to raise every "colorable" claim. *Richardson v. Palmer*, 941 F.3d 838, 858 (6th Cir. 2019) (citing *Jones*, 463 U.S. at 754). Because the Court has examined each of the claims in the petition and determined they lack merit, Petitioner cannot demonstrate either deficient performance or prejudice in appellate counsel's failure to raise those claims. *Buell v. Mitchell*, 274 F.3d 337, 352 (6th Cir. 2001).

Petitioner is not entitled to habeas relief for his claims of ineffective assistance of counsel and instructional error.

### E. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). But here, reasonable jurists could not "debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

The Court also denies Petitioner leave to appeal *in forma pauperis*, because any appeal would be frivolous. *Dell v. Straub*, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

## IV.   Conclusion and Order

For the reasons set forth above, the habeas petition is denied with prejudice.

It is further ordered that a certificate of appealability is denied, and Petitioner is denied leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: March 21, 2023          s/Judith E. Levy
    Ann Arbor, Michigan        JUDITH E. LEVY
                                   United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 21, 2023.

                                   s/William Barkholz
                                   WILLIAM BARKHOLZ
                                   Case Manager